[No. 36680. Department One. December 5, 1963.]

F. E. INGERSOL, *Respondent,* v. SEATTLE-FIRST NATIONAL
BANK, *Appellant.*\*

*Lisle R. Guernsey* (of *Howe, Davis, Riese & Jones*), for
appellant.

*John J. Keough,* for respondent.

HUNTER, J.—This is an appeal from a judgment for the
plaintiff in an action for the conversion of a herd of cattle.
General damages were also awarded for the loss of an
alleged going dairy business.

\*Reported in 387 P. (2d) 538.

In 1951, the plaintiff (respondent) Ingersol went to work for a Mr. Sharpe, first as a milker and later as a foreman, on a farm owned by Sharpe in Clallam County. They entered into a working arrangement whereby the plaintiff would receive $200 a month and, at times, board and room from Sharpe. The plaintiff testified that he "drew" only what he needed for his necessary living expenses; that the excess was kept for him by Sharpe to be applied toward the eventual purchase of the herd. Sharpe kept no record of these credits.

In November, 1956, Sharpe mortgaged the farm and all equipment and supplies thereon to the defendant (appellant) bank. In 1957, Sharpe incorporated a creamery he owned in Poulsbo under the name of Vita Rich Dairy, Inc., and the next year he leased the farm to this corporation for a term of 10 years. Sometime in 1957 or 1958, Sharpe issued to the plaintiff a stock certificate in Vita Rich Dairy, Inc., with a stated value of $10,000 in consideration of the plaintiff's accumulated back pay. The farm had a "Grade A" license to sell fresh whole milk. In February, 1959, the farm was de-graded by the state inspector because of defects.

Plaintiff alleged that he purchased the herd from Sharpe in March, 1959. He testified that he made a down payment with the $10,000 stock certificate and gave a mortgage to Sharpe for the $15,000 balance. Sharpe was to pay a $7,500 mortgage encumbering the herd, and put the farm back on a "Grade A" basis. Sharpe planned to do this when he received a loan that he was attempting to negotiate. Vita Rich Dairy, Inc., by Sharpe, assigned its lessee's interest in Sharpe's farm to the plaintiff. Sharpe did not receive the loan and could not perform this obligation as he had agreed.

In November, 1958, the defendant had commenced an action against Sharpe and others to foreclose its mortgage on the farm and ". . . all other supplies and equipment . . ." located thereon. The plaintiff was not made a party thereto even though an amended complaint was

filed in November, 1959, 7 months after the plaintiff purchased the cattle and recorded his bill of sale from Sharpe. The decree of foreclosure, entered in that action on May 16, 1960, purportedly foreclosed an interest in the cattle. The sheriff seized the cattle July 5, 1960, and they were later sold.

Subsequent to the sheriff's sale, one Little brought action against the plaintiff in Clallam County on the note for $15,000, executed by plaintiff in favor of Sharpe, which Little held. That case was dismissed prior to the institution of this appeal.

In the instant case, the trial court held that the plaintiff's dairy herd was converted by the defendant when the sheriff seized the cattle, and that the plaintiff lost a dairy business as a result of this conversion. The court awarded the plaintiff $23,350 for the cattle, and $9,700 for the business. The defendant was granted an offset for the $15,000 mortgage and the accumulated interest thereon, which had been assigned by Little to the bank. The final judgment entered in favor of the plaintiff totaled $19,412.63. The defendant appeals.

■ The defendant contends that the sale of the dairy herd was never completed, and that the plaintiff did not acquire title to the cattle. The plaintiff testified, and the trial judge chose to believe, that the parties intended title to pass at the time they entered into the contract of sale. The court found that the bill of sale and mortgage were what they purported to be. The finding is supported by substantial evidence; therefore, it will not be disturbed. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183 (1959).

The defendant further contends, however, in the event title did pass to the plaintiff that a subsequent agreement to rescind or modify was intended, and may be inferred from the conduct of the parties. The plaintiff testified to the contrary. This testimony was sufficient to support the finding of the trial court adverse to the defendant on this contention.

The defendant contends that the foreclosure suit brought by it against Sharpe and others foreclosed any interest in the cattle that the plaintiff might claim. The mortgage covered the real estate and further provided that all listed personal property on the premises should be included. At the end of the list of personalty, the mortgage terminated with the following language:

"Without limiting the generality of the foregoing, all other supplies and equipment owned by the mortgagor situate on the premises herein described."

■ A mortgage must point out its subject matter so that a third person upon a reasonable investigation may identify the chattels covered. *Schneller v. Vincent,* 131 Wash. 238, 229 Pac. 737 (1924). In order to encumber cattle a mortgage must not only mention them but there must be at least some description of the animals' characteristics, marks, brands and location. 14 C.J.S., Chattel Mortgages § 65; *cf. First Nat. Bank of Kelso v. Hart,* 137 Wash. 110, 241 Pac. 675 (1925).

In the instant case there is no reference to any animals in the mortgage. When the plaintiff purchased the herd, he became a bona fide purchaser. Even the most diligent search would not have revealed that the defendant claimed a lien on the herd. He was not a party to the foreclosure suit, and the judgment rendered after he had acquired title was not binding upon him.

The defendant contends that the trial court erred in not holding that the plaintiff was collaterally estopped to assert that title to the herd passed to him because he defended in the Clallam County suit brought by Little on the ground that title had not passed. Little testified the Clallam County Superior Court ruled the plaintiff could not be held on the $15,000 note given as part of the purchase price for the herd because he did not acquire title and there was no consideration for the note. Ingersol testified the Clallam County court did not so hold but gave other reasons for granting the dismissal. Neither the order of dismissal nor the pleadings were tendered into evidence in this case. The

defense asserted by Ingersol in the Clallam County suit and the basis of the court's judgment in that case were disputed. The trial court's determination of this factual issue will not be disturbed. *Thorndike v. Hesperian Orchards, Inc., supra.*

The defendant contends that the court erred in finding the value of the cattle to be $23,350. The plaintiff testified that the value of the herd was more than that amount. The defendant asks this court to find that the testimony of the plaintiff does not constitute substantial evidence, and that the finding of the trial court is against the weight of the evidence as supplied by the defendant. The contention is without merit.

■ An owner may testify as to the value of his property because he is familiar enough with it to know its worth. *Cunningham v. Town of Tieton,* 60 Wn. (2d) 434, 374 P. (2d) 375 (1962). The weight to be given to such testimony is properly left to the trier of fact. *Wicklund v. Allraum,* 122 Wash. 546, 211 Pac. 760 (1922).

The trial judge, in his oral opinion, said:

". . . I am particularly impressed with the candor and accuracy, compared with all of the transactions that are of record, of the testimony of the plaintiff in so far as it pertains to questions of controverted fact. The actions that he did, his demeanor upon the witness stand, his attitude toward the transactions as they occurred, as testified to by others indicate that as near as humanly possible what he says here in this trial is true."

It is not our province to retry the case de novo from the record. The trial court's determination on conflicting evidence is decisive. *Thorndike v. Hesperian Orchards, Inc., supra.*

■ The defendant contends that the trial court erred in awarding the plaintiff damages for loss of his dairy business. With this contention we agree. The plaintiff testified that as a result of the conversion he lost a dairy business which, if located on a "Grade A" dairy farm, would have earned a net profit of $5,000 a year.

In *Hole v. Unity Petroleum Corp.*, 15 Wn. (2d) 416, 131 P. (2d) 150 (1942), we quoted with approval from 15 Am. Jur., Damages § 157, as follows:

" ' "According to the weight of authority, however, a recovery may be had for such losses (future profit) where they are reasonably certain in character and are the proximate result of either tort or breach of contract . . .

" ' "To come within the rule, it must be made to appear that the business which is claimed to have been interrupted was an established one which had been successfully conducted for such length of time and had such a trade established that the profits thereof are reasonably ascertainable." ' "

The dairy was operated at a loss after Ingersol acquired ownership of the herd because the farm did not have a "Grade A" classification. Sharpe owned nearly all of the equipment, and his equipment was validly foreclosed when the defendant foreclosed its mortgage. Mortgages upon the farm and creamery had also been validly foreclosed at the time of the conversion. There was nothing left of the dairy business except the cows that belonged to the plaintiff, and a few miscellaneous items of equipment that he owned. The plaintiff therefore (1) failed to establish a successfully conducted going business at the time of the conversion, and (2) after the mortgage foreclosures, irrespective of the conversion, the plaintiff would have had no going business to conduct.

The trial court erred when it awarded $9,700 damages for the loss of a dairy business; therefore, that portion of the judgment is reversed. The trial court is affirmed in all other respects.

The plaintiff having substantially prevailed will be allowed his costs on this appeal.

OTT, C. J., ROSELLINI, and HALE, JJ., and POYHONEN, J. Pro Tem., concur.