247 A.2d 87.

STATE *vs.* RUDOLPH DETTORE.

OCTOBER 31, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.   This indictment for murder was tried before a justice of the superior court sitting with a jury.   The jury returned a verdict of guilty of murder in the second degree.   Thereafter, the trial justice denied the defendant's motion for a new trial and sentenced him to serve 25 years in the adult correctional institutions.   The case is before us on the defendant's bill of exceptions.

The record shows that on the evening of December 18, 1964, at approximately 10:45 p.m. in the town of Johnston, Thomas Conaty was shot and killed in the first-floor apartment of Sally Pires.   Sally had been separated from her husband for a number of years and she and her two children lived in this apartment.   She and her nine-year-old daughter were witnesses to the homicide and the events which preceded.   It is clear that Sally and the victim Conaty had lived together as husband and wife for a period of time which ended somewhere in June 1963.   The Pires children referred to Conaty as "daddy."   In December 1963 Sally first became acquainted with defendant.   This acquaintanceship ripened to the point that in October 1964, Sally was defendant's girlfriend.   At one time he lived in the Pires apartment for a week.   It is obvious that it was Sally's association with defendant and Conaty which helped to provoke the incident described here.

On the evening in question Sally and defendant were to go out to dinner.   The defendant did not appear at the appointed hour so Sally telephoned him at his mother's home to find out why he was late.   He assured Sally that he would arrive at her house in a matter of minutes.   How-

ever, defendant did not appear at the apartment until over an hour later (10:30 p.m.). He then told Sally that he had been "drinking soda" with Conaty. Shortly thereafter there was a knock at the door. The defendant opened the door and let Conaty into the kitchen. A brief verbal exchange between the two men came to a halt when defendant bolted from the apartment. He went to his car, took a loaded pistol from beneath the front seat and placed it in his hip pocket. A loud banging on the apartment door announced his return to the premises. As Sally opened the door, defendant pushed it in with such force that she was thrown against the kitchen table. What happened next was the focal issue at the trial.

Both Sally and her nine-year-old daughter testified that after Conaty pushed defendant against a window, Dettore drew his revolver, pointed it at his victim and fired it twice. The defendant, however, testified that as he was pushed back, the gun became dislodged from his pocket and fell to the floor. He gave a blow by blow description of the alleged tremendous struggle as he and the deceased grappled for the weapon. The shooting, he claims, was an accident. Sally testified as a rebuttal witness. She denied that defendant's gun had fallen to the floor or that any struggle ensued between the two men. The state's chief medical examiner described Conaty's wounds. One bullet, he said, went through the deceased's right thigh. The second projectile entered the victim at his left cheek near the angle of the jaw, traveled up through the brain and lodged in the decedent's skull. The skull was not penetrated. The physician attributed Conaty's death to this shot. He also said that the gun was in contact with the skin when it was discharged.

The defendant's bill of exceptions is limited to four evidentiary rulings made by the trial justice. He first contends that the trial court erred when it would not permit

the defense to ask a policeman if the officer had been called to the Pires apartment on prior occasions to quell disturbances. In pressing this exception before us defendant claims that if this question had been allowed, it would have enabled him to elicit testimony to show both that Conaty was possessed of a violent temper—a man easily provoked to violence; and that there was possible bias on the part of the policeman.

We reject this argument. While it is well established that the scope of cross-examination is a matter that is properly within the trial justice's discretion, we fault defendant for a much more significant and elemental reason. Although defendant assures us in his brief that had he been able to pursue his questioning, he would have developed testimony as we have described it, the record discloses that defendant never made an offer of proof to the superior court as to the purpose of his inquiry. Having failed to do so at the trial level, he cannot now rely on the representation he makes in this court. *State* v. *Frazier,* 101 R. I. 156, 221 A.2d 468; *State* v. *Smith,* 70 R. I. 500, 41 A.2d 153.

During the direct examination of Mrs. Pires, she was asked by the prosecutor whether, before the night of the killing, she had ever seen defendant in the possession of a gun. She gave an affirmative reply. Both the question and answer drew no objection from defendant. She then stated that on two different occasions she had seen defendant with a gun. The question which invoked this response was objected to by defendant. Thereafter and without objection by defendant, Sally began to describe the location and time of the first incident. At this point in the trial the following exchange occurred:

"Q Oh, you're outside the premises in the parking area?
"A Yes, sir.
"Q Now, will you tell the Court and jury what you observed?

"Mr. Toro: I object.
"The Court: What is the objection?
"Mr. Toro: I don't see the relevancy of this line
of questioning or the materiality of it.
"The Court: The objection is overruled.
"Mr. Toro: Exception please."

The prosecution then proceeded to bring out in full detail the two occasions when the witness had seen defendant brandishing a gun. Sally first told about a fight in a cafe parking lot with defendant being in the lot pointing a gun. Whom, if anyone, the gun was pointed at, does not appear in the transcript. The second episode involved a woman who was dating defendant. It occurred in October 1964, and was near the same cafe mentioned earlier by the witness. As the woman ran up to the Pires car, defendant appeared, pulled his gun and told Sally to move on. Sally moved on. The defendant offered no objection to this testimony.

In pressing the exception which we have set forth above, defendant vigorously challenges the relevancy of this evidence. He alleges that by no stretch of one's imagination can the two gun-wielding episodes be directed toward proof by the prosecution of the state of defendant's mind at the time of the December 18 shooting. The sole purpose of its introduction, defendant claims, was to implant upon the jury's mind a picture of him being a gunman.

Here defendant in effect asks that we declare as error a certain line of testimony elicited from a series of questions to which he took no objection. While the record shows that he has presented but one exception to one question which at trial time he claimed was irrelevant, defendant now claims that all the testimony relative to his past experiences with guns was prejudicial. The record is clear, however, that defendant made no effort to strike any answers given by Sally. It is well settled that in criminal appeals, this court will only review those evidentiary rul-

ings to which a specific exception has been taken and thus preserved for our scrutiny.

Under our well-established appellate procedures, a single exception to a ruling on a question does not provide a basis for review of an entire line of questioning which might follow. *State* v. *Quattrocchi,* 103 R. I. 115, 235 A.2d 99. We believe that a party loses the benefit of his original exception if he thereafter allows similar questions on the same subject matter to be introduced into evidence without objection. Furthermore, while we note that defendant now in this court characterizes the evidence of his gun-displaying experiences as being prejudicial, no motion was ever made during the trial below to strike any of the testimony as is required in this state. *State* v. *Rooks,* 62 R. I. 251, 4 A.2d 905. Our long-standing rule is that a contemporaneous objection or at least a motion to strike, plus a ruling and an exception thereto are prerequisites to an appellate review. In *State* v. *Franklin,* 103 R. I. 715, 241 A.2d 219, we pointed out that such a requirement serves a legitimate purpose in the adjudication of criminal matters because it alerts the trial justice's attention to the issue raised and insures a record on appeal which will focus on precise questions. Failure to comply with the rule will ordinarily preclude review in this court. We can see nothing in the circumstances of the instant case which would warrant a departure from this rule. For the reasons enumerated, defendant is deemed to have foreclosed any review by us of the superior court action of which he now complains.

The remaining exceptions require little discussion. The trial justice correctly admitted into evidence a sketch made by a police officer of the Pires kitchen and certain furniture and fixtures found in that room. Although the officer conceded that his sketch was not drawn to scale, he pointed out that the measurements which appeared thereon were accurate. As we stated in *State* v. *Greene,* 74 R. I. 437, 60

A.2d 711, a sketch or map of the scene of a crime and the relative location of objects thereon is admissible as an aid to the jury's understanding an application of the evidence in a case provided it is reasonably accurate. We have examined the sketch and the officer's testimony and find that the exhibit was properly received into the record.

The last exception of the defendant relates to the admission of testimony by a cabdriver that shortly after the shooting he picked up a man in a black leather jacket at a bar near the scene of the crime and drove his passenger to the Federal Hill section of Providence. We fail to see how this testimony, even assuming it should have been excluded, was in any manner prejudicial to the defendant. Dettore, in testifying in his own behalf, admitted that he had gone to a nearby bar after he had left the Pires premises and from there took a cab to Federal Hill. The defendant said he was wearing a black leather jacket on that particular evening and in substance corroborated most of the testimony offered by the cab operator.

All of the defendant's exceptions are overruled and the case is remitted to the superior court for further proceedings.

Motion for reargument denied as per Order dated January 30, 1969.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, *Luc R. LaBrosse,* Special Assistant Attorney General, for plaintiff.

*James Cardono,* Public Defender, *Eugene F. Toro,* Assistant Public Defender, for defendant.