# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58335-6-II |
| Respondent, | |
| v. | |
| WILLIAM VICTOR GOLYSHEVSKY, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — William V. Golyshevsky appeals his conviction for second degree theft, arguing that there was insufficient evidence to support the jury's verdict.  We reverse Golyshevsky's conviction for second degree theft, and we remand to the trial court to impose judgment on the lesser included offense of third degree theft and to resentence Golyshevsky.[1]

## FACTS

In October 2022, the State charged Golyshevsky with residential burglary and second degree theft.  The State also alleged the aggravating circumstance that Golyshevsky knew or should have known that the victims were particularly vulnerable or incapable of resistance.  The case proceeded to a jury trial.

---

[1] Golyshevsky also argues that the $500 crime victim penalty assessment (CVPA) should be stricken from his judgment and sentence.  The State concedes that the CVPA should be stricken. As our remand of this matter necessarily requires resentencing, the parties may address the CVPA issue with the trial court on remand.

Neena Kirkwood testified that she had lived in her home located in Camas, Washington with her husband since 2018. In October 2022, Kirkwood and her husband evacuated their home due to wildfires. On the morning of October 20, Kirkwood checked her home security doorbell camera to see if the wildfires had progressed and was notified of a prior recording showing a vehicle in the driveway and a woman on the porch. Kirkwood reviewed several videos from different cameras around the home. On one video, Kirkwood saw two people walking out of the woods near the home. Kirkwood then called her husband and told him to call 911.

Kirkwood returned to her home to speak to the police. Kirkwood identified a duffel bag full of her items and her pressure washer in the suspects' vehicle. Kirkwood testified that the suspects had entered the "garden room" of the home, which was attached to the home and had heat and electricity but was only accessible from the outdoors. 1 Verbatim Rep. of Proc. at 120. Kirkwood used the garden room for storing gifts and other things. When Kirkwood entered the garden room, she saw that the items on the shelves had been gone through and items appeared to be missing; however, she was not sure exactly what had been taken. The State introduced photographs of the suspect's vehicle full of Kirkwood's property.

Kirkwood testified that the approximate value of the property taken was $1500. Kirkwood also explained that there were additional items that the police recovered from the vehicle that she had not included in the $1500 estimated value.

Sergeant Christopher Skidmore of the Clark County Sheriff's Office, the officer who responded to Kirkwood's home on the morning of October 20, also testified. According to Sergeant Skidmore, when he arrived at the home, he observed the vehicle that Kirkwood had described seeing on the security camera. Sergeant Skidmore then observed a man and a woman walking toward him from the home. Sergeant Skidmore ordered them to stop, but they took off

running in opposite directions. Several other officers from the sheriff's office arrived in an attempt to locate the suspects. Ultimately, the two suspects were located and identified as Christine Pfeifer and Golyshevsky.

The trial court instructed the jury on second degree theft and third degree theft, as a lesser included offense. The jury found Golyshevsky guilty as charged of second degree theft. The trial court imposed a prison-based drug offender sentencing alternative (DOSA) sentence.

Golyshevsky appeals.

## ANALYSIS

Golyshevsky argues that there was insufficient evidence to support the jury's verdict finding him guilty of second degree theft because the State failed to prove that the market value of the stolen goods was more than $750. We agree.

We review challenges to the sufficiency of the evidence by considering the evidence in the light most favorable to the State and determining whether any rational factfinder could have found the elements of the crime beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). A defendant claiming insufficient evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Circumstantial and direct evidence are considered equally reliable. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). We defer to the factfinder on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

A person is guilty of second degree theft if he commits theft of property exceeding $750 but less than $5,000. RCW 9A.56.040. "'Value' means the market value of the property or services at the time and in the approximate area of the criminal act." RCW 9A.56.010(21)(a).

"Market value is the price a well-informed buyer would pay to a well-informed seller, when neither is obliged to enter the transaction." *State v. Jussila*, 197 Wn. App. 908, 934, 392 P.3d 1108 (2017), *review denied*, 191 Wn.2d 1019 (2018).

Evidence of retail price or the price paid for an item may be sufficient to establish market value and is entitled to great weight. *State v. Erhardt*, 167 Wn. App. 934, 944, 276 P.3d 332 (2012). However, such evidence may not be too remote in time and must allow the fact finder to draw reasonable inferences as to the actual market value, including changes to the property affecting its value. *Id*. "Evidence other than market value, such as replacement cost, is inadmissible unless it is first shown that the property has no market value." *Id*.

Here, the only evidence of market value that the State introduced at trial was Kirkman's testimony that the total value of all the property stolen was approximately $1,500. On its face, this testimony fails to establish market value as required by the theft statutes because there is no indication how Kirkman determined this approximate amount—whether it was based on retail price, the price she paid for the items, what she believed the items would sell for, or replacement cost. And even if it would be reasonable for the jury to infer that Kirkman based her estimate on the price paid for each item, there was no evidence establishing when the items were purchased or whether there were changes to the property that could change its value. Without additional evidence regarding the basis for Kirkman's estimated value of the stolen property of approximately $1,500, there is not sufficient evidence for the jury to find beyond a reasonable doubt that the *market value* of the property was more than $750.[2] Accordingly, there was insufficient evidence

---

[2] The dissent appears to equate Kirkwood's testimony of "value" with "market value." However, testimony of "value" is not testimony about "market value." *See State v. Hammond*, 6 Wn. App. 459, 460-63, 493 P.2d 1249 (1972) (sufficient evidence supported conviction when owner was asked about and testified to the "fair market value" of the stolen property); *State v. Williams*, 199 Wn. App. 99, 107, 398 P.3d 1150 (2017) (insufficient evidence when owner testifies only to

to support the jury's verdict finding Golyshevsky guilty of second degree theft. Accordingly, we reverse Golyshevsky's conviction for second degree theft.

However, the State argues, and Golyshevsky concedes, that because the jury was instructed on the lesser included crime of third degree theft, the appropriate remedy is to remand to the trial court to enter a conviction for third degree theft and resentence Golyshevsky. We agree.

"[I]f a jury is properly instructed on a lesser included offense, an appellate court may remand to the trial court for imposition of judgment on a lesser included crime where the jury necessarily found the elements of the lesser offense." *In re Pers. Restraint of Heidari*, 159 Wn. App. 601, 607, 248 P.3d 550 (2011), *aff'd*, 174 Wn.2d 288 (2012).

Here, the jury was instructed on the lesser included offense of third degree theft. And the only difference between the elements of second degree theft and third degree theft in this case is the value of the stolen property. *See* RCW 9A.56.040(1)(a) (A person is guilty of second degree theft if they commit theft of property which exceeds $750 but does not exceed $5,000 in value.); RCW 9A.56.050(1)(a) (A person is guilty of third degree theft if they commit theft of property which does not exceed $750 in value.). Therefore, the jury necessarily found all the essential elements of third degree theft when it found Golyshevsky guilty of second degree theft. Accordingly, we agree that the appropriate remedy is to remand to the trial court to impose judgment for a third degree theft conviction and to resentence Golyshevsky.

## CONCLUSION

There was insufficient evidence to support the jury's verdict finding Golyshevsky guilty of second degree theft. Therefore, we reverse Golyshevsky's second degree theft conviction.

---

"value" of the property and not "market value" and owner did not state the basis of his opinion as to the value of the property).

No. 58335-6-II

However, because the jury was instructed on the lesser included crime of third degree theft, we remand to the trial court to impose judgment for a third degree theft conviction and to resentence Golyshevsky.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

I concur:

Veljacic, A.C.J.

6

GLASGOW, J. (dissenting)—Because there was sufficient evidence to support the decision that Golyshevsky was guilty of second degree theft, especially in light of the deference we give to the jury verdicts, I respectfully dissent. I would affirm the second degree theft conviction.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational finder of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "[I]nferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). We defer to the jury to resolve issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. *State v. Rodriquez*, 187 Wn. App. 922, 930, 352 P.3d 200 (2015).

Golyshevsky argues the State failed to prove that the market value of the goods stolen from Kirkwood was more than $750. Market value is an objective standard that consists of the price that a well-informed buyer would pay to a well-informed seller, when neither is obligated to enter the sales transaction. *State v. Longshore*, 141 Wn.2d 414, 429, 5 P.3d 1256 (2000). Market value need not be proven by direct evidence. *State v. Hermann*, 138 Wn. App. 596, 602, 158 P.3d 96 (2007). Rather, the jury may draw reasonable inferences from the evidence. *State v. Melrose*, 2 Wn. App. 824, 831, 470 P.2d 552 (1970). For example, a jury may draw reasonable inferences from other testimony about the market value, like the purchase price and how the current condition of the property affects its value. *State v. Ehrhardt,* 167 Wn. App. 934, 944, 276 P.3d 332 (2012). Thus,

a witness need not testify specifically to the market value of the stolen goods in order for the evidence that the market value exceeded $750 to be sufficient. *Id.*

In *State v. Hammond*, 6 Wn. App. 459, 460, 493 P.2d 1249 (1972), the jury convicted the defendant of grand larceny, which required that the stolen items had a combined market value in excess of $75. On appeal, the defendant argued in part that insufficient evidence supported that the stolen items had a market value of $75. *Id.* at 460-61. When asked at trial about the "fair market value" of the stolen property, the owner testified that one stolen ring was worth at least $600. *Id.* at 460. The court concluded that sufficient evidence supported that the market value of the stolen items exceeded $75. *Id.* at 463. Critical to its decision was the fact that the owner's estimate of the value exceeded $75 by several hundred dollars. *Id.* The degree to which the testimony showed the estimated value exceeded the statutory limit has been a critical factor in other cases as well. *See Ehrhardt,* 167 Wn. App. at 936; *State v. Morley,* 119 Wn. App. 939, 941-44, 83 P.3d 1023 (2004).

In *State v. Williams*, 199 Wn. App. 99, 398 P.3d 1150 (2017), the issue was whether sufficient evidence supported the jury's finding that stolen property had a market value of over $750, an element of the crime of stolen property in the second degree. *Id.* at 103-04. At trial, the State asked the property owner whether he was "able to assess a value of an amount that all that property was worth at the time it was taken?" *Id.* at 103. The owner responded that he "could give a rough estimate." *Id.* The State then asked, "What value would you total your loss at being?" *Id.* He responded, "I would say roughly $800." *Id.*

The *Williams* court concluded that this evidence was insufficient because the owner's "rough estimate . . . barely exceeded the $750 minimum." 199 Wn. App. at 107. In reaching its conclusion, the court distinguished *Hammond*. The court noted that "[i]n *Hammond*, the value of the goods well exceeded the $75 minimum." *Id.* Additionally, in *Hammond*, the "prosecutor asked

the victim to disclose a 'fair market value,'" while in *Williams*, the prosecutor "only requested a 'value.'" *Id.* (quoting *Hammond*, 6 Wn. App. at 460). The court also noted that the victim "did not testify to the basis of his opinion of value," stating, "For all we know, he used the purchase price of the goods, the replacement cost of the goods, or some intrinsic value to himself." *Id.* at 111.

Here, the State asked Kirkwood to estimate the value of her stolen property. Therefore, the State's question here more closely resembled the question in *Williams* because it similarly did not ask the witness to state the "fair market value." Additionally, like in *Williams*, Kirkwood did not testify what formed the basis of her determination of value. She did not state whether she based her assessment of value on the purchase price, the replacement cost, or some other value. Nonetheless, I would conclude that a central factor in *Williams* was how close the estimated value was to the statutory threshold. In that respect, this case is more analogous to *Hammond* than *Williams*. And in some respects, the evidence in this case was even stronger than that in *Hammond* because, as discussed below, the jury both heard testimony about the value of the stolen property and saw pictures of the stolen property itself, which allowed the jurors to make reasonable inferences about the property's market value on their own.

I would conclude that the State presented sufficient evidence from which a reasonable juror could infer that the market value of the stolen property far exceeded $750 beyond a reasonable doubt. Golyshevsky necessarily admits the truth of all of the State's evidence and all reasonable inferences therefrom. As the majority acknowledges, Kirkwood testified that the approximate value of the property taken was $1500. Kirkwood also explained that there were additional items that the police recovered from the vehicle that she failed to include in the $1500 estimated value. Kirkwood's estimate was several hundred dollars more than the $750 the jury needed to support a

conviction for second degree theft, and even $1500 was a conservative estimate given that some of the stolen property was not included.[3]

In addition, in this case, the jurors saw for themselves photographs of the stolen property which were admitted as exhibits and discussed during Kirkwood's testimony. The jurors were therefore able to see whether Kirkwood's estimate was unreasonable on its face. In other words, the jurors were able to judge for themselves whether Kirkwood was exaggerating or whether it was reasonable to conclude that the market value of the stolen property exceeded $750.

Finally, Golyshevsky moved for dismissal of the second degree theft charge after presentation of the State's evidence, arguing in part that the State had presented insufficient evidence of the market value of the stolen property. The standard the trial court applied at that stage is similar to the standard we apply in a sufficiency of the evidence challenge. The trial court had to consider whether the State had presented sufficient prima facie evidence of market value to sustain a second degree theft conviction, drawing all inferences in favor of the State. Unlike this court, the trial judge saw firsthand all of the evidence and heard all of the testimony, including Kirkwood's estimate and the pictures of the stolen items admitted as exhibits. The trial court concluded that the State presented sufficient evidence that the market value of the stolen goods exceeded $750 such that the jury could determine whether this element was met. The trial court declined to dismiss the second degree theft charge after considering all of the State's evidence. We should not come to a different conclusion on a nearly identical question based only on our review of a cold record that does not even include the exhibits the jury saw depicting the stolen property. Doing so ignores the trial court's firsthand observation of the evidence.

---

[3] Up to this point, this dissent copies or closely tracks the background and analysis in *State v. Bahta*, No. 53110-1-II, slip op. (Wash. Ct. App. June 9, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2053110-1-II%20Unpublished%20Opinion.pdf

In sum, I would affirm Golyshevsky's second degree theft conviction because drawing all inferences in favor of the State, the jury could reasonably conclude that Kirkwood's stolen property was worth more than $750. Kirkwood's conservative estimate was several hundred dollars more than the $750 statutory amount, the jurors saw for themselves pictures of the stolen property, and the trial judge, who also saw and heard all of the State's evidence firsthand, found that evidence sufficient to support a guilty verdict.

GLASGOW, J.